## NATIONAL STEEL CORPORATION v. UNITED STATES.

### No. 8038.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 7, 1942.

Decided Jan. 22, 1943.

John E. Laughlin, Jr., of Pittsburgh, Pa., for appellant.

Paul S. McMahon, of Washington, D. C., for appellee.

Before BIGGS, MARIS and JONES, Circuit Judges.

BIGGS, Circuit Judge.

The Producers Steamship Company filed its capital stock tax return for the taxable year ending June 30, 1936, and set the value of its stock at $6,000,000. Producers began liquidation on November 30, 1936, and was formally dissolved by the action of its stockholder on December 24, 1936. National Steel Corporation, which was its sole stockholder, is its transferee and assignee. Producers, as we have shown, continued in business during a portion of the taxable year ending June 30, 1937. It filed a capital stock tax return for that year, declared an adjusted value for its stock of $2,938,157.65 and paid a capital stock tax of $2,938. It arrived at the adjusted declared value by adding to the amount of its 1936 declaration a sum representing its net income for the current year and deducting therefrom cash in the amount of $129,882.83 and assets of the fair market value of $3,426,474.34 which it distributed in its liquidation.

About four years later, at the request of National, the last board of directors of Producers filed a claim against the United States which asserted that National, as the assignee of Producers, was entitled to recover the amount of the capital stock tax paid by Producers for the taxable year ending June 30, 1937. The basis of this claim and of National's instant suit may be stated as follows.

Conceding that Producers was compelled to pay a capital stock tax for the year ending June 30, 1937, since it did business within that taxable year, National says that the adjusted declared value of Producers stock for the year ending June 30, 1937, was zero because Producers distributed to National in that year cash and assets which represented the full value of Producers capital stock. In other words, National asserts that since all of the assets of Producers were distributed before the end of the calendar year 1936 and the value of those assets was fixed by Producers at $6,000,000, the adjusted declared value referred to in Section 105(f) of the Revenue Act of 1935, c. 829, 49 Stat. 1014, 26 U.S.C.A. Int.Rev.Acts, page 796, was zero because $6,000,000 worth of assets had been distributed.

The validity of National's position turns of course upon the interpretation to be given the word "value" employed in Section 105 (f) (A) of the statute, "the value of property distributed in liquidation to shareholders * * *". The United States takes the position that the word value refers to fair market value. National asserts that the word cannot have this meaning because a corresponding section of a subsequent revenue act[1] provides expressly that the declared value should be adjusted downward by the "cash and fair market value of property" distributed in liquidation. Article 43 of Treasury Regulations 64, 1934 Edition, provides in part that the adjusted declared value shall be determined by deducting the value of the property distributed to shareholders in liquidation or partial liquidation and that "The value of such property shall be determined as of the date of such distribution. * * *" The date of distribution in the case at bar was November 30, 1936. If the Treasury Regulation is a reasonable interpretation of the statute then the value of the property distributed must be ascertained as of that date. It would follow that the value put upon the assets of the corporation in its original capital stock tax return nearly a year before would not be available as evidence of value and the contention of National must fail. The article of the Treasury Regulation referred to seems to us to constitute a reasonable and proper interpretation of the language of the statute.

[1] The appellant refers to this Act as the Revenue Act of 1937. Actually the express provision to which National refers is contained in Section 601(f) (3) (E) (i) of the Revenue Act of 1938. See 26 U.S.C.A. Int.Rev.Acts, page 1140.

We think that Congress in employing the word "value" in Section 105 (f) (A) of the 1935 Act meant that the property distributed to stockholders should be given its actual or real value. Fair market value is evidence of actual value. The fair market value of the property distributed by Producers to National in accordance with Producers' own statement on its 1937 return was $3,426,474.34. The value of property distributed cannot be measured in terms of the declared value stated in the original capital stock tax return for the additional reason that the value so declared is an elected value and may be pure fiction. American Viscose Corporation v. Rothensies, 3 Cir., 121 F.2d 186; First Nat. Pictures v. United States, Ct.Cl., 32 F.Supp. 138. The taxpayer in the case at bar put too high a valuation on its capital stock in its original return. That burden must be borne by its successor. It follows that the amount paid by Producers as capital stock tax for the year ending June 30, 1937, was due and owing.

The judgment of the court below is affirmed.